FRANK CASTLE ET AL.

v.

CATHERINE FOGERTY, by, etc.

DRAM SHOP ACT—REVERSIONER'S INTEREST.—The court is of opinion that it was the intention of the legislature, in the passage of sections 9 and 10 of the Dram Shop Act, to deal only with landlords and their property, and those having a rentable interest in buildings and premises that they could control at the time, and that it was not intended to include those who only have reversionary and contingent interests, and who are not in any way responsible for the renting, control or disposition of the property.

APPEAL from the Circuit Court of Knox county; the Hon. A. A. SMITH, Judge, presiding. Opinion filed April 5, 1886.

Mr. R. C. HUNT and Mr. GEORGE W. THOMPSON, for appellants.

Mr. F. A. WILLOUGHBY and Mr. F. S. MURPHY, for appellee.

LACEY, P. J. The appellee brought her suit in equity against the appellants, Frank Castle, Frederick Castle, Asahel A. Castle, Etta Sullivan and Ida Egan, seeking to subject their reversionary interest in two lots in the city of Galesburg to the payment of a certain judgment of $400 recovered by appellee against A. A. Castle, March 22, 1884, in the Circuit Court in Knox county, in an action on the case for selling intoxicating liquor to her father, John Fogerty, which caused his intoxication, by reason of which he came to his death, whereby she was injured in her means of support. The intox-

icating liquor was sold on these lots by A. A. Castle, he at the time having a life interest in them as tenant by curtesy of his late wife, Rachel Castle, deceased, the appellants being the heirs at law of the deceased Rachel, who died seized of the lots subject to the curtesy rights of A. A. Castle, several years before the selling of the intoxicating liquor to Fogerty. It is alleged in the bill that a long time prior to the said sale of liquor to Fogerty the appellants and each of them had leased and knowingly permitted said premises to be used and occupied by the said A. A. Castle for the sale of intoxicating liquors, under which leasing and permission the said A. A. Castle was using and occupying said premises at the time when he sold to said John Fogerty the intoxicating liquors mentioned. The bill was dismissed as to A. A. Castle, and he was not a party to it, he having a homestead interest in the lots which could not be touched by this proceeding; only the reversionary interests of appellants were sought to be reached and subjected to sale.

The court below granted the relief and rendered a decree ordering the reversionary interests of appellants to be sold to satisfy the said judgment, from which decree this appeal is taken.

It appears from the evidence that Castle used the premises without asking the permission of the appellants, claiming his right to do so under his estate. The appellants, however, all being of majority except Asahel, who was a minor at the time of the selling of the intoxicating liquor complained of, did not object to the business of selling intoxicating liquors being carried on in the building on the lots, the most of them being members of the family living on the premises with their father A. A. Castle, and perhaps all knew that such business was being carried on by him, and no objection was made by them.

The decision in this case involves the construction of the 9th and 10th sections of chapter 43 of the Revised Statutes, commonly called the "Dram Shop Act." Sections 9 and 10, as far as they may relate to the rights of the appellants in this case, are as follows:

Sec. 9. * * * " And any person owning, renting, leasing or permitting of any building or premises, and having knowledge that intoxicating liquors are to be sold therein, or who having leased the same for other purposes, shall knowingly permit therein the sale of intoxicating liquors that have caused, in whole or in part, the intoxication of any person, shall be liable, severally or jointly, with the person or persons selling or giving intoxicating liquors aforesaid, for all damages sustained and for exemplary damages * * * and the unlawful sale or giving away of intoxicating liquors shall work a forfeiture of all rights of the lessee or tenant under any lease or contract of rent upon the premises where such unlawful sale and giving away shall take place," etc.

Sec. 10 provides, among other things, * * * "And in case any person shall rent or lease to another any building or premises to be used or occupied, in whole or in part, for the sale of intoxicating liquors, or shall knowingly permit the same to be used and occupied, such building or premises so used or occupied shall be held liable for and may be sold to pay any such judgment against any person occupying such building or premises " * * * "Provided that if such building or premises belong to a minor or other person under guardianship, the guardian or conservator of such person, and his real or personal property, shall be held liable instead of such ward, and his property shall be subject to all the provisions of this section relating to the collection of said judgments."

These are the only sections of the statute that bear upon the question in hand, and after a careful consideration of the subject we have arrived at the conclusion that it was the intention of the legislature in the passage of the two sections to deal only with landlords and their property and those having a rentable interest in buildings and premises that they could control at the time, and that it was not intended to include those who only have reversionary and contingent interest and who are not in any way responsible for the renting, control or disposition of the property.

Any other construction would work great hardship on those

Castle v. Fogerty.

who only have reversionary and contingent interests in real estate, and would be carrying the construction of the statute to unreasonable lengths to so hold. No person can reasonably be said to "permit" premises to be used for the sale of intoxicating liquors unless such person has the control over and disposition of the property for the time being, and he can not properly be said to be in that position when he has but a reversionary interest, only coming into control and possession upon the termination of a life.

It was not the intention of the law to drive parties to seek extraordinary and doubtful remedies in order to prevent a forfeiture of their estate under the Dram Shop Act. If the court should first hold that the owner of the reversion should be classed with the landlords in the above sections there would seem to be a necessity to furnish him with some remedy to enable him to prevent, by injunction or otherwise, the use of his property in carrying on the sale of intoxicating liquors, or to require the person so using to give security against damages resulting from such sales, but without such holding no necessity for the furnishing of such a remedy exists, for his property can not be taken. The legislature, in the Dram Shop Act, has not furnished such remedy to a reversioner as it would have been proper to have done in case he were included, and this omission furnishes strong ground for holding that he was not intended to be included. In case of landlords such remedy is indeed furnished in the provision that the "unlawful sale or giving away of intoxicating liquors shall work a forfeiture of all rights of the lessee or tenant under any lease or contract of rent upon the premises where such unlawful sale or giving away shall take place." Great doubt exists as to whether a landlord, having rented his premises for purposes other than for the sale or giving away of intoxicating liquors for a fixed term, without provision of forfeiture in the lease in case of such sale, and lawful sales are made before the lease expires with a knowledge of the landlord, and afterward a sale is made also within the time fixed in the lease for its term, from which damages result, would be liable personally, or the leased property subject to the payment of the damages recovered.

The statute, it will be seen, allows forfeiture for the tenant's lease only in the case of *unlawful* sales. But we are not called upon to deal with this question, and pass it by. The 9th section of the statute in question would make the appellants personally liable for the damages accruing to appellee in case that c'ass of persons is embraced in the statute if they had been sued at law in the first instance. If the lots in question are held for the payment of this judgment under the 10th section, the appellees could have been sued jointly with A. A. Castle, or severally by themselves, under the 9th section. By the 10th section the guardian of a minor, whose property would be liable in case he were an adult, is held personally liable for the damages as well as his real estate, and the minor and his property are excused.

Now, Asahel was a minor at the time of the sale of the intoxicating liquor to Fogerty complained of, and the damages for which the judgment was obtained, and yet the decree is rendered against his interests in the lots as well as that of the other appellants in violation of the express provisions of the statute. If he had no guardian, he, being a minor, could not give legal consent to the use of his property for the sale of intoxicating liquors. The class of persons to which the appellants belong is not by express terms or fair implication included in the statute, and for this reason the court below erred in holding the reversionary. interests of the appellants liable to be sold to pay the judgment agai·.st A. A. Castle and in rendering the decree. The decree of the court below is therefore reversed and cause remanded, with direction to the court to dismiss the bill.

Decree reversed and remanded.