Brownlee v. Village of Alexis.

WILLIAM L. BROWNLEE

v.

THE VILLAGE OF ALEXIS.

*Municipal Corporations—Negligence—Defective Sidewalk—Personal Injuries—Notice—Evidence—Instructions.*

1. A municipality must use reasonable diligence and care to keep its sidewalk in a reasonably safe condition.

2. Notice of the unsafe condition of a sidewalk may be implied if the defects complained of have existed for such a length of time that the municipal authorities, or any of its officers and agents whose duty it is to give notice thereof to the city, by the exercise of reasonable care might have known of such defect.

3. It is not necessary to a recovery that a municipality should have had notice of the condition of the particular plank which caused the injury in question.

4. Notice to a street commissioner is notice to a municipality.

5. Where repairs are made by a municipality to a sidewalk, it is bound to take notice of the character of the same, and the condition of the walk when repaired, whether safe or unsafe.

6.  Actual or constructive notice is not required in cases of defective construction, whether the defects exist in method or material.

7.  In the case presented, this court holds that evidence of the condition of the sidewalk in question shortly previous to the accident should have been admitted, also as to portions thereof distant from the point where the injury occurred.

[Opinion filed May 21, 1891.]

IN ERROR to the Circuit Court of Warren County; the Hon. JOHN C. BAGBY, Judge, presiding.

Messrs. KIRKPATRICK & ALEXANDER and JAMES M. WILSON, for plaintiff in error.

It is claimed that defendant had neither actual nor constructive notice of the condition of the walk, and hence was not liable. In Hearn v. Chicago, 20 Ill. App. 252, it is held that notice of the unsafe condition of the walk might be implied if the defect existed for such a length of time that the authorities of the city by the exercise of reasonable care and diligence might have known of it. So in Sheridan v. Hibbard, 19 Ill. App. 421, it is held that if the walk had been out of repair for a sufficient length of time that the city authorities, in the exercise of reasonable care and prudence, ought to have known the fact, that would be notice. And such is the doctrine of Aurora v. Dale, 90 Ill. 46, and Aurora v. Hillman, 90 Ill. 61, and many other cases unnecessary now to refer to.

We contend we have fairly brought ourselves within the principle of these cases. It was not necessary that the village authorities should have actual knowledge of the looseness of the particular plank which happened to occasion the injury. Weisenberg v. Appleton, 26 Wis. 59. In Troxel v. Vinton, 41 N. W. Rep. 582, it it said: "This is a case like many others where a defective walk—known to be so—but not regarded as dangerous, is used for a time with safety, and then for some cause that is not and could not be anticipated, an accident results." In Aurora v. Hillman, 90 Ill. 61, plaintiff and many others had been in the habit of passing over the walk where the injury occurred, often, and in Sheridan v. Hibbard, 19 Ill. App. 421, the facts were that four persons were walking

Brownlee v. Village of Alexis.

together two and two. The first two passed safely, but the last two, one of whom was plaintiff, did not. Yet in neither case did the facts stated prevent a recovery. So it is in all cases of this nature, especially in cases arising out of defects occasioned by decay; for a time there is safety, for a time reasonably so, but the end comes and danger follows, and even then many may pass and repass without hurt. It was contended that the village officers were under no more obligation to find defects in the walk than plaintiff was. In Kewanee v. Depew, 80 Ill. 119, it is said that "had plaintiff not known the defect he might probably have been justified in assuming that the walk was safe, and in acting upon that hypothesis." And in Davenport v. Ruckman, 37 N. Y. 578, it is said: "The streets and sidewalks are for the benefit of all conditions of people, and all have the right, in using them, to assume that they are in good condition, and to regulate their conduct upon that assumption. A person may walk or drive in the darkness of the night, relying upon the belief that the corporation has performed its duty and that the street or the walk is in safe condition. He walks by a faith justified by law, and if his faith is unfounded and he suffers an injury, the party in fault must respond in damages."

If the members of the board did not possess the requisite skill to discharge the duty of inspection, then it was their duty to provide some one possessing such skill. Thompson on Trials, Sec. 1757. When a bridge has stood for the time timbers are expected to last, and it may be reasonably expected that decay has set in, it is negligence to omit all proper precautions to ascertain its condition. In such a case appearances will not excuse the neglect. 2 Thompson, Negligence, 796, citing Rapho v. Moore, 68 Pa. St. 404. In McLeansboro v. Lay, 29 Ill. App. 478, it is said: "It appears this walk had been built a length of time sufficient for the city authorities to have learned how it was constructed and the kind of materials used, and under the circumstances, no other notice of its condition would be necessary. Ordinary observation was sufficient to inform the city authorities that the walk constructed as it was and with such material as was

used might not be reasonably safe." So in Wheaton v. Hadley, 30 Ill. App. 564, the court say: "When a sidewalk has stood as long as this one and become rotten from exposure to the weather and time, the authorities ought to be held to have constructive notice of its condition, for with reasonable care such condition could be easily ascertained." And in Sheridan v. Hibbard, 19 Ill. App. 459, it is said that it was the duty of the village " to use ordinary care and diligence in the erection and maintenance of its sidewalks," and it was held that this duty includes discovery of the defects in a sidewalk. Many other cases might be cited to the same effect. This duty of inspection and care, then, was one that the board could not without fault neglect.

Crossley and McBride, agents of the village, knew the exact condition, or were ignorant through negligence. Knowledge on the part of the street commissioner was notice to the village. Fuller v. Jackson, 46 N. W. Rep. 721. As was well said in Wheaton v. Hadley, 30 Ill. App. 564, "it was evident that the walk could not be placed in a good sound condition without new material." The village, in causing these repairs to be made in the manner they were done, was guilty of gross negligence. Chicago v. Herz, 87 Ill. 541. " There is no question but that those in charge of the walks had full knowledge of that fact, and attempted to repair the same about three weeks before the injury to appellee. It appears that some new boards were substituted for others decayed, but no new stringers were put in. The proof tended to show that the walk was not in fact repaired so as to render the same safe and in good repair and condition. If this was so, the municipal authorities are chargeable with notice of it. If the authorities attempted to repair this walk, and, as the evidence attempted to show, the stringers were so decayed as to be incapable of holding the nails with which the boards constituting the walk were intended to be fastened, the authorities must have known it. If the town had laid a new walk out of defective material, from which an injury resulted, the town would have been chargeable with notice of the defect. So, in this case, if the authorities, having both

actual and constructive notice of the defective condition of the walk before the repairs were made, so made the repairs that the walk was left in unsafe condition and repair because of the defective material therein, they would be liable for injury resulting from such defect." Wheaton v. Hadley, 23 N. E. Rep. 423, 131 Ill. 640. If the city caused the work to be done, it was bound to take notice of its character and of the walk, whether safe or dangerous. Chicago v. Brophy, 79 Ill. 277. Neither actual nor constructive notice is required to be shown in cases of defective construction. Village of Mansfield v. Moore, 21 Ill. App. 326. If the road officers patch up a rotten bridge with a view of making it last until the next spring, they become *quasi* insurers of travelers who use it in the meantime. 2 Thompson on Negligence, 796, citing Humphreys v. Armstrong Co., 56 Pa. St. 204. These authorities in addition to those already cited, as we think, abundantly sustain our position, not only upon the point under discussion, but also show erroneous rulings, on the part of the court, upon the admission and rejection of evidence and upon the instructions.

Messrs. Pepper & Scott and Grier & Stewart, for defendant in error.

As to the law, we have no contest with rule of law as established in cases referred to by counsel. In Alexander v. Mt. Sterling, 71 Ill. on page 368, the court say : "Had this sidewalk been repaired but a few days before the accident it would go far to exonerate the defendant from the charge of negligence." And if there had been evidence to sustain it, the court would have held the instruction good. And there the walk was defectively constructed. In the case of the Village of Sheridan v. Hibbard, 19 Ill. App. 429, the court holds that an instruction that says that "the village is bound to use ordinary reasonable care and diligence," is good law. The walk in that case was made of inch boards; they were broken and split; had been down for four, five or six years, had always been out of repair and no attempt made to look after it or repair it; there was no fault in stringers. In the case

of City of Aurora v. Hillman, 90 Ill. 61, the stringers were rotten, would not hold nails and had been so for a long time; had been bad for years; the street commissioner said it was bad and the authorities had been notified, and no attempt had been made to repair the walk or make it safe. In the city of Aurora v. Dale, 90 Ill. 46, the sidewalks were bad in every direction and had been so so long that the authorities ought to know it, and no evidence was offered to show that any care was used, any repairs made, or anything done for the protection of the citizens. The law in that case, and applicable to the case at bar, is laid down as follows: "If the walks are properly constructed the authorities have the right to presume they will remain safe until long use or natural decay make them unsafe, and then, until notice is given or long delay has transpired after they become apparently unsafe, there is no liability for accidents, and sufficient time must elapse after notice to make repairs." The case of Hearn v. The City of Chicago, 20 Ill. App. 246, shows that the construction was bad in the beginning. In the case of Troxel v. Vinton, 41 N. W. Reporter, 582, the walk had been out of repair for nearly a year and the officers of the city had been notified thereof.

Doubtless the law quoted from Thompson on Negligence is good, but has no application to a case where the supervisory officers are going over it and repairing every visible defect and every defect that can be found on examination. In McLeansboro v. Lay, 29 Ill. App. 478, the walk was constructed of old plank; they soon rotted at the ends; would not hold nails; had been built a long time; the city officials had looked at it and saw the defects; the man sent to repair it was ordered to nail down the rotten boards, when new ones should have been put in. In the case of Kewanee v. Depew, 80 Ill. 119, the boards were but inch material; had been there so long that a hole had rotted in the board in plain sight large enough for a person's foot to go through, and no one had looked after it or attempted to repair it. The case of the Town of Wheaton v. Hadley, 30 Ill. App. 564, is the case counsel are arguing, and they insist that the facts of that

case are the facts in this case, when there is not a shadow of semblance between them.   In our case there was no sagging of the walk, not a single decayed board, not a decayed spot in the whole of the last laid stringers, or if one, only the one presented by the exhibit, and that not found where the board tripped up with plaintiff.

UPTON, J.   This was a suit by the plaintiff in error to recover damages for injuries received on account of the alleged defective condition of a sidewalk in the defendant village.

The alleged facts, which seem to be sustained by the evidence, are, in brief, that on the morning of July 1, 1889, plaintiff in error was traveling over a sidewalk in the defendant village, which it was bound to keep in repair, from the business portion thereof to his dwelling place situate therein, accompanied by his two daughters, the one six and the other about thirteen years of age, plaintiff in error carrying in one hand a scythe and hoe and in the other a package of coffee, the elder daughter walking by his side and the younger a few steps in advance.   Near the steps of the United Brethren Church in that village, the elder daughter—walking on the outside—stepped on the end of a loose board or plank, of which the sidewalk was in part composed, which flew up, tripped the plaintiff in error and he fell upon the scythe, splitting his left hand open between the fingers nearly to the wrist, by which injury he is permanently disabled.   The fact as to the injury, the extent and manner of its occurrence, is conceded.   No claim is made that plaintiff in error was negligent, or that he in any way contributed to the resulting injury.

The only question involved in this contention now is, was the defendant in error guilty of negligence in not keeping its sidewalk at the time and place when the injury occurred in a reasonably safe condition for the use of a person traveling upon it, using due care, and if the same was not in such repair, had defendant in error actual or constructive notice (by lapse of time or otherwise) of such defect.

If an affirmative answer be given, then the judgment of the

Circuit Court should be reversed; if in the negative, that judgment must be affirmed.

In the Circuit Court a verdict and judgment was rendered against the plaintiff in error. He brings the suit to this court by writ of error, and complains that the trial court erred in refusing evidence offered on behalf of plaintiff in error, in modifying the instructions offered by plaintiff in error, and in giving erroneous instructions to the jury in behalf of the defendant in error, in excluding proper evidence offered by plaintiff in error and in refusing a new trial. The controversy in the trial court was purely one of fact, sharply contested on both sides; the evidence was conflicting, and consequently it became important that the jury should have been accurately instructed as to the law of the case.

It might not be proper for us to discuss in detail the testimony in this record, in the view we take of the case, but a mere reference to some of the established or undisputed facts may be allowed, to the better understanding and applications of the principles hereafter stated. The walk in question has been in use for a period of thirteen or fourteen years, and is situate upon one of the main streets of the village of Alexis. It was originally constructed of two-inch pine plank placed upon and nailed to pine wood stringers two by six inches, laid upon the ground.

Some six or seven years prior to the injury the walk had been relaid by the village authorities; in so doing some new material and some of that taken from the old walk was used, planks as well as stringers.

The old stringers were then more or less decayed; those then unfit for use were replaced by new ones, but what proportion of the old stringers were used in relaying the walk does not appear. The planks in this walk near where the injury occurred had become loose in consequence of the stringers not holding the nails, either from decay or use, and the street commissioners of the village, pursuant to its orders, had notice of such defects several times within a few months prior to the injury, and had examined the walk and attempted to and, as they supposed, had repaired such defects by nailing

the loose plank down, but without examination of the condition of the stringers to determine whether they were decayed or otherwise. These repairs last mentioned were commenced by one Crossly, acting street commissioner of the village, on the 27th of April, 1889, who in passing over the walk found several loose plank near where the injury subsequently occurred, and he nailed the loose plank to the stringer, and he testified that the nail did not drive as if the sill or stringer was solid at that time; and he further testified that the cause of the planks being loose was that the nails drew out of the stringers.

About the middle of June, 1889, one McBride, then street commissioner of the village, carefully examined this walk, and then found a number of plank loose near where this injury complained of occurred, and he also nailed the plank down found loose. Again, about ten days thereafter, and shortly prior to the injury, he went over and examined the same walk again, for the purpose of repairs, and then found loose planks in that walk and again nailed them down, and he says the occasion of the planks being loose was that the stringers did not hold the nails. Six or seven other witnesses testified that they passed over the walk in question varying from one day to six weeks prior to the injury; that they saw loose planks in the immediate vicinity of where the injury occurred; some of these witnesses were tripped by the loose plank in the walk as they testify.

To rebut this, much testimony of facts and circumstances was heard, a large part being negative in character.

The rule of law is, that notice of the unsafe condition of a sidewalk may be implied, if the defects complained of have existed for such a length of time that the municipal authorities of the city or village, or any of its officers or agents, whose duty it was to give notice thereof to the city, by the exercise of reasonable care and diligence, might have known of such defect. Hearn v. Chicago, 20 Ill. App. 249; Sheridan v. Hibbard, 19 Ill. App. 442; Aurora v. Dale, 90 Ill. 46; Aurora v. Hillman, 90 Ill. 61. Nor was it necessary to a recovery that appellee should have had notice of the condition

of this particular plank which occasioned the injury. Weisenberg v. Appleton, 26 Wis. 59; Aurora v. Dale, *supra*. Notice of the condition of the walk and the soundness or unsoundness of its materials to the street commissioners was notice to the village. Fuller v. Jackson, 46 N. W. R. 721; Wheaton v. Hadley, 30 Ill. App. 564.

The case last cited is in many of its facts similar to the case at bar.

The repairs being made by the village, of the walk in question, it was bound to take notice of the character of the repairs and the condition of the walk when so repaired, whether safe or dangerous. Chicago v. Brophy, 79 Ill. 277; Chicago v. Herz, 87 Ill. 541.

Neither actual nor constructive notice is required in cases of defective construction, whether such defects exist in method or material. Village of Mansfield v. Moore, 21 Ill. App. 326; Wheaton v. Hadley, *supra.* We think the trial court erred in confining the plaintiff's evidence to that particular part of the walk in question where the injury occurred. Weisenberg v. Appleton, 26 Wis. 56; Sheridan v. Hibbard, *supra;* McLeansboro v. Lay, 29 Ill. App. 478; Aurora v. Hillman, *supra;* Chase v. Chicago, 20 Ill. App. 274; Shaw v. Village of Sun Prairie, 42 N. W. R. (Wis.) 271. The trial court erred, we think also, in not allowing the witness, Charles Clute, called by plaintiff in error, to testify as to notice by the village authorities of the bad condition of the walk in question, and its need of new material for its repair in 1888. It was not so remote under the evidence as to warrant the court in excluding it from the jury. Chicago v. Bixby, 84 Ill. 85; Chicago v. Herz, *supra;* Chicago v. Crooker, 2 Ill. App. 279; Aurora v. Dale, 90 Ill. 48; Aurora v. Hillman, 90 Ill. 64.

We are also of the opinion that the trial court erred in modifying plaintiff in error's instructions numbers two, five, seven, nine and fifteen, and giving the same to the jury as modified.

The law is, as we understand it, that municipalities are required to use *reasonable* diligence and care to keep its sidewalks in a *reasonably* safe condition.

The instructions as modified informed the jury that such walks were required to be kept in *ordinarily* good and safe condition.   The distinction between what is *reasonable* and what is *customary* must be apparent.

We think the trial court was in error in its modification of plaintiff in error's instructions numbers thirteen and fourteen as modified and read to the jury.   We think they were misleading.   We are also of the opinion that the trial court erred in reading and giving to the jury the defendant in error's instructions numbers eight, nine and ten, and that the same were misleading.

We have carefully examined this record in the light of the able arguments of the learned counsel for the respective parties, and we are clearly of the opinion that the verdict in this case can not be supported by the evidence in this record.

The judgment of the Circuit Court is therefore reversed, and the cause is remanded for further proceedings not inconsistent with the views above expressed.

*Reversed and remanded.*